United States Courts
Southern District of Texas
FILED

JAN 2 8 2003

Michael N. Milby, Clerk

# IN THE UNITED STATES DISTRICT COURT

## FOR THE __SOUTHERN__ DISTRICT OF TEXAS

### __HOUSTON__ Division

## PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

_HEARING REQUESTED_

__LELAND HAROLD BROOKS__
PETITIONER
(Full name of Petitioner)

__T.D.C.J. TERRELL UNIT__
CURRENT PLACE OF CONFINEMENT

VS.

__896397__
PRISONER ID NUMBER

H-03-0348

__JANIE COCKRELL__
RESPONDENT
(Name of TDCJ Director, Warden, Jailor, or
authorized person having custody of petitioner)

__TRIAL CT. NO. 0819711-A__
CASE NUMBER
(Supplied by the Clerk of the District Court)

---

## INSTRUCTIONS - READ CAREFULLY

1. The petition must be legibly handwritten or typewritten, and signed by the petitioner, under penalty of perjury. Any false statement of an important fact may lead to prosecution for perjury. Answer all questions in the proper space on the form.

2. Additional pages are not allowed except in answer to questions 11 and 20. Do not cite legal authorities. Any additional arguments or facts you want to present must be in a separate memorandum.

3. When the Clerk of Court receives the $5.00 filing fee, the Clerk will file your petition if it is in proper order.

4. If you do not have the necessary filing fee, you may ask permission to proceed _in forma pauperis_. To proceed _in forma pauperis_, (1) you must sign the declaration provided with this petition to show that you cannot prepay the fees and costs, and (2) if you are confined in TDCJ-ID, you must send in a certified _In Forma Pauperis_ Data Sheet from the institution in which you are confined. If you are in an institution other than TDCJ-ID, you must send in a certificate completed by an authorized officer at your institution certifying the amount of money you have on deposit at that institution. If you have access or have had access to enough funds to pay the filing fee, then you must pay the filing fee.

5.    Only judgments entered by one court may be challenged in a single petition. If you want to challenge judgments entered by different courts, either in the same state or in different states, you must file separate petitions as to each court.

6.    Include all your grounds for relief and all the facts that support each ground for relief in this petition.

7.    When you have finished filling out the petition, mail the original and two copies to the Clerk of the United States District Court for the federal district within which the State court was held which convicted and sentenced you, or to the federal district in which you are in custody. A "VENUE LIST," which lists U.S. District Courts in Texas, their divisions, and the addresses for the clerk's office for each division, is posted in your unit law library. You may use this list to decide where to mail your petition.

8.    Petitions that do not meet these instructions may be returned to you.

---

## PETITION

**What are you challenging?**  (Check only one)

☑  A judgment of conviction or sentence,    (Answer Questions 1-4, 5-12 & 20-23)
    probation or deferred-adjudication probation
☐  A parole revocation proceeding.    (Answer Questions 1-4, 13-14, & 20-23)
☐  A disciplinary proceeding.    (Answer Questions 1-4, 15-19 & 20-23)

**All petitioners must answer questions 1-4:**

1.    Name and location of the court (district and county) which entered the conviction and sentence that you are presently serving or that is under attack:
      182 ND. DISTRICT COURT    HARRIS COUNTY

2.    Date of judgment of conviction: OCTOBER 1 ST. 1999

3.    Length of sentence: LIFE

4.    Nature of offense and docket number (if known): KNOWINGLY POSSESSING W/INTENT
      TO DELIVER COCAINE WEIGHING OVER 4 GRAMS BUT LESS THAN 200 GRAMS

**Judgment of Conviction or Sentence, Probation or Deferred-Adjudication Probation:**

5.    What was your plea? (Check one)

      ☑  Not Guilty    ☐  Guilty    ☐  Nolo contendere

6.    Kind of trial: (Check one)    ☑  Jury    ☐  Judge Only

- 2 -    CONTINUED ON NEXT PAGE

7. Did you testify at the trial?    ☐ Yes    ☑ No

8. Did you appeal the judgment of conviction?    ☑ Yes    ☐ No

9. If you did appeal, in what appellate court did you file your direct appeal?

   3RD JUDICIAL DISTRICT Cause Number (if known) 03-00-00026-CR

   What was the result of your direct appeal (affirmed, modified or reversed): AFFIRMED

   What was the date of that decision? NOV, 30,2000, REHEARING DENIED JAN, 11, 2001

   If you filed a petition for discretionary review after the decision of the court of appeals, answer the following:

   Result: REFUSED

   Date of result: MAY 30,2001    Cause Number (if known): 0638-01

   If you filed a petition for *writ of certiorari* with the United States Supreme Court, answer the following:

   Result: _____

   Date of result: _____

10. Other than a direct appeal, have you filed any petitions, applications or motions from this judgment in any court, state or federal? This includes any state application for writ of habeas corpus that you may have filed.

    ☑ Yes    ☐ No

11. If your answer to 10 is "Yes," give the following information:

    Name of court: 182 ND DISTRICT COURT HARRIS COUNTY

    Nature of proceeding: APPLICATION FOR A WRIT OF HABEAS CORPUS

    Cause number (if known): 819711-A

    Date (month, day and year) you filed the petition, application or motion as shown by a file-stamped date from the particular court.
    JANUARY 16, 2002

    Grounds raised: DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL

    AND DUE PROCESS, FACTUAL INNOCENCE

- 3 -    CONTINUED ON NEXT PAGE

Date of final decision: SEPTEMBER 18, 2002

Name of court that issued the final decision: COURT OF CRIMINAL APPEALS OF TEXAS

As to any _second_ petition, application or motion, give the same information:

Name of court: _____

Nature of proceeding: _____

_____

Date (month, day and year) you filed the petition, application or motion as shown by a file-stamped date from the particular court.

_____

Grounds raised: _____

_____

_____

Date of final decision: _____

Name of court that issued the final decision: _____

_If you have filed more than two petitions, applications, or motions, please attach an additional sheet of paper and give the same information about each petition, application, or motion._

12.    Do you have any future sentence to serve after you finish serving the sentence you are attacking in this petition?

☐    Yes        ☑    No

(a)    If your answer is "yes," give the name and location of the court that imposed the sentence to be served in the future:

_____

_____

(b)    Give the date and length of the sentence to be served in the future: _____

_____

(c)    Have you filed, or do you intend to file, any petition attacking the judgment for the sentence you must serve in the future?

☐    Yes        ☐    No

- 4 -

CONTINUED ON NEXT PAGE

**Parole Revocation:**

13.    Date and location of your parole revocation: _____

14.    Have you filed any petitions, applications, or motions in any state or federal court challenging your parole revocation?

      ☐    Yes          ☐    No

If your answer is "yes," complete Question 11 above regarding your parole revocation.

**Disciplinary Proceedings:**

15.    For your original conviction, was there a finding that you used or exhibited a deadly weapon?    ☐ Yes    ☑ No

16.    Are you eligible for mandatory supervised release?    ☐ Yes    ☐ No

17.    Name and location of prison or TDCJ Unit that found you guilty of the disciplinary violation:

_____

Disciplinary case number: _____

18.    Date you were found guilty of the disciplinary violation: _____

Did you lose previously earned good-time credits?    ☐ Yes    ☐ No

Identify all punishment imposed, including the length of any punishment if applicable, any changes in custody status, and the number of earned good-time credits lost: _____

_____

19.    Did you appeal the finding of guilty through the prison or TDCJ grievance procedure?

      ☐    Yes          ☐    No

If your answer to Question 19 is "yes," answer the following:

Step 1 Result: _____

_____

    Date of Result: _____

Step 2 Result: _____

_____

      CONTINUED ON NEXT PAGE

Date of Result: _____

**All applicants must answer the remaining questions:**

20. State clearly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting them.

   **CAUTION:**
   Exhaustion of State Remedies: You must ordinarily present your arguments to the highest state court as to each ground before you can proceed in federal court.
   Subsequent Petitions: If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

Following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement is a separate ground for possible relief. You may raise any grounds, even if not listed below, if you have exhausted your state court remedies. However, you should raise in this petition all available grounds (relating to this conviction) on which you base your belief that you are being held unlawfully.

DO NOT JUST CHECK ONE OR MORE OF THE LISTED GROUNDS. Instead, you must also STATE the SUPPORTING FACTS for ANY ground you rely upon as the basis for your petition.

(a)   Conviction obtained by a plea of guilty which was unlawfully induced, or not made voluntarily, or made without an understanding of the nature of the charge and the consequences of the plea.

(b)   Conviction obtained by the use of a coerced confession.

(c)   Conviction obtained by the use of evidence gained from an unconstitutional search and seizure.

(d)   Conviction obtained by the use of evidence obtained from an unlawful arrest.

(e)   Conviction obtained by a violation of the privilege against self-incrimination.

(f)   Conviction obtained by the prosecution's failure to tell the defendant about evidence favorable to the defendant.

(g)   Conviction obtained by the action of a grand or petit jury which was unconstitutionally selected and impaneled.

(h)   Conviction obtained by a violation of the protection against double jeopardy.

(i)   Denial of effective assistance of counsel.

(j)   Denial of the right to appeal.

(k)   Violation of my right to due process in a disciplinary action taken by prison officials.

- 6 -

CONTINUED ON NEXT PAGE

A.    GROUND ONE: WHETHER BROOKS RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL BEFORE TRIAL, DURING TRIAL AND IN POST-CONVICTION PROCEEDINGS

Supporting FACTS (tell your story briefly without citing cases or law):

(See: Petitioner's BRIEF and APPENDIX, enclosed)

B.    GROUND TWO: WHETHER BROOKS WAS DENIED DUE PROCESS OF LAW WHEN TRIAL COURT KNOWINGLY DENIED SUPPRESSION OF ILLEGALLY OBTAINED EVIDENCE

Supporting FACTS (tell your story briefly without citing cases or law):

(See: Petitioner's Brief and APPENDIX, enclosed)

C.    GROUND THREE: _____

_____

Supporting FACTS (tell your story briefly without citing cases or law):

-7-                                          CONTINUED ON NEXT PAGE

D.    **GROUND FOUR:** _____

_____

Supporting FACTS (tell your story briefly without citing cases or law):

_____

_____

_____

_____

_____

21.    Have you previously filed a federal habeas petition attacking the same conviction, parole revocation, or disciplinary proceeding that you are attacking in this petition?

☐    Yes        ☑    No

If your answer is "yes," give the date on which each petition was filed, the federal court in which it was filed, and whether the petition was (a) dismissed without prejudice or (b) denied.

_____

_____

_____

22.    Are any of the grounds listed in paragraph 20 above presented for the first time in this petition?

☐    Yes        ☑    No

If your answer is "yes," state briefly what grounds are presented for the first time and give your reasons for not presenting them to any other court, either state or federal.

_____

_____

_____

- 8 -                                    CONTINUED ON NEXT PAGE



23. Do you have any habeas corpus proceedings or appeals now pending in any court, either state or federal, relating to the judgment or proceeding under attack?

☐ Yes      ☑ No

If "yes," identify each type of proceeding that is pending (i.e., direct appeal, art. 11.07 application, or federal habeas petition), the court in which each proceeding is pending, and the date each proceeding was filed.

_____

_____

Wherefore, petitioner prays that the Court grant him the relief to which he may be entitled.

_Leland H. Brooks pro. se_
Signature of Attorney (if any)

LELAND HAROLD BROOKS # 896397

1300 FM 655 TERRELL UNIT

ROSHARON, TEXAS 77583

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on

January 27, 2003 _____ (month, date, year).

Executed on January 27, 2003 _____ (date).

_Leland H. Brooks_
Signature of Petitioner (required)

Petitioner's current address: 1300 FM 655 TERRELL UNIT

ROSHARON, TEXAS 77583

_____

PETITIONER'S BRIEF

# Table of Contents

Table of Authorities _____ iii

Statement of the Case _____ 1

Statement of Facts _____ 1

Issues and Authorities _____ 4

   Issue 1: Whether Brooks received Effective    4
       assistance of Counsel before trial, during
       trial and in Post-conviction Proceedings

     Ground A: Counsel failed to challenge    4
         warrantless arrest

     Ground B: Counsel did not conduct a thourough    6
         investigation of facts surrounding the
         charges and possible defenses.

     Ground C: Counsel failed to adequately    6
         Prepare for trial.

     Ground D: Counsel failed to conduct proper
         Voir Dire.    16

     Ground E: Counsel failed to file any
         meaningful motions    19

Ground F:   Counsel failed to request any    22
            jury instructions and failed contest
            omission of a key element from the
            jury charge.

Ground G:   Counsel's conduct amounted to    25
            abandonment of his client.

Issue 2:    Whether Brooks was denied Due Process  35
            of Law when trial court knowingly denied
            suppression of illegally obtained evidence.


CONCLUSIONS & PRAYER _____  38


APPENDIX  (under separate cover)

# Table of Authorities

United States Constitution - Fifth Amendment          37, 40
                          Sixth Amendment          40

United States Supreme Court:

Bailey v. U.S., 116 S. Ct. 501, 505 (1995)          31

Coolidge v. New Hampshire, 91 S. Ct. 2002 (1971)          36

Griffin v. Illinois, 76 S. Ct. 585, 591 (1956)          25, 26, 34

Horton v. California, 110 S. Ct. 2301 (1990)          36

Mincey v. Arizona, 98 S. Ct. 2408, 2414 (1978)          24, 25

New Jersey v. T.L.O., 105 S. Ct. 733, 740 (1985)          23

Payton v. New York, 100 S. Ct. 1371 (1980)          24

Sabbath v. United States, 88 S. Ct. 1755 (1968)          23, 37

Smith v. U.S., 113 S. Ct. 2050 (1993)          31

U.S. v. Cronic, 109 S. Ct. 2065 (1984)          7

Wilson v. Arkansas, 115 S. Ct. 1914 (1995)          23

U.S. Circuit Courts of Appeal:

Chalk v. Beto, 429 F. 2d 225 (5 CA 1970)          4

Clark v. Blackburn, 619 F. 2d 431 (5 CA 1980)          19, 29

Lombard v. Lynaugh, 868 F. 2d 1475 (5 CA 1989)          22

Nealy v. Cabana, 764 F. 2d 1173 (5 CA 1985)          7

Osborn v. Shillinger, 861 F. 2d 612 (10 CA 1988)          25, 34

United States v. Hammonds, 425 F. 2d 547 (DC C. 1970)          22

United States v. Tucker, 716 F. 2d 576 (9 CA 1983)          7

-iii-

Texas Codes of Criminal Procedure:

Tex CCP Art. 15.02 Requisite of Complaint        28

Tex CCP Art. 16.01 Examining Trial                5

Tex CCP Art. 38.23 Evidence Not to Be Used       35

Texas Court of Criminal Appeals:

Polk v. State, 738 S.W. 2d 274, 276 (1987)       35

American Bar Association:
 Standard 4-72                                    16

Abbreviations used:

            CR   text cited from clerk's records
            RR   text cited from reporter's records

PETITIONER'S BRIEF

IN SUPPORT OF § 2254

STATEMENT OF THE CASE

On May 7, 1999 the petitioner, Leland Brooks, was arrested when plainclothes narcotics agents jerked him from his brother's room after a knock which agents admit in their testimony was not followed by the necessary announcement of their identity. They also testified there was no probable cause and no consent, nor has the State ever claimed there were exigent circumstances. Finally, no warrant was ever issued for Leland Brooks. Yet his arrest was followed by indictment for possession of cocaine with intent to distribute and with using a firearm in the process. Brooks was convicted in a jury trial and sentenced to life imprisonment on October 1, 1999.

STATEMENT OF FACTS

In January 1999 petitioner's brother, George Brooks, was arrested in Houston and charged with selling cocaine to an undercover agent. He was awaiting trial when the May 7th incident occurred. Leland Brooks' life-long occupation was being a millwright, his work carrying him over the country to factory sites in need of such specialty skill. Leland and young James Martin, his daughter's fiance, traveled from their home in Tennessee to seek work in Houston. George booked them into room 326 at the Suburban Lodge on the

-1-

N.W. Freeway where he'd been staying in efficiency apartment number 142 for several weeks.

On the Friday in question, May 7, Leland and Martin checked out of 326 before 11 A.M. checkout time and put their bags in Leland's red Dodge Colt in readiness to return to Tennessee. In this red car Leland, George and Martin went to lunch, then returned shortly before 2 P.M. Upon their return they were under surveillance of an H.P.D. narcotics team whose lead agent, M.E. Smith, had been involved in George's arrest in January (RR vol V, p. 22-24 ). But neither Smith nor his present team members recognized or even knew of Leland Brooks or James Martin; had no probable cause to suspect them of any wrong doing. (RR vol. V, p. 30, 31-33).

Agents watched George exit later to retrieve a blue duffle bag from the trunk of his own tan 1989 Cadillac and carry it inside 142. The agents soon witnessed the approach of a blue GMC pickup truck with two unknown men who got out and carried two boxes into 142, then almost immediately drove away. They were not followed or detained for questioning by team members once out of sight of the motel. Leland Brooks was seen leaving 142, walking through the parking lot, then entering the door of Cavender's western boot store off the adjacent lot, and returning to the room. (RR vol V, p. 34, 35-37). )

-2-

In due course, James Martin drove himself and George Brooks away in Leland's red Dodge. They were followed by agents Siewert and Young in a pickup. A patrol car was notified by radio to follow the Dodge; it was soon stopped for allegedly making a right turn without signalling near the entrance to the Westwind Tavern. (RR vol II, p. 39-41).

In a patdown for weapons, a small amount of marijuana was found in a pocket of Martin. A marijuana cigarette was found in a toilet kit behind the driver's seat, and was attributed to George, though he entered the car with nothing. Both men were handcuffed; George refused consent to search his motel room 142 unless his attorney was present. The two were then held in a patrol car near to, but out of sight of, the Suburban Lodge. Officers testified that George Brooks stated he had more marijuana in room 142. No marijuana was found there. (RR vol II, p. 42-44).

At that point, without a warrant and without consent, agents knocked, and by their own testimony (RR vol II, p. 44; 47; 61-62), refrained from announcing their identity in a clearly wrongful "knock and announce".

Upon opening the door, Leland Brooks was jerked from the room, cuffed and detained in a squad car for over three hours while agents searched the room on the premise that a baggie of white powder had been spotted in view from the doorway. A drug dog and

-3-

handler were called to check the room, George's car and Leland's Dodge. (RR vol. V, p. 61).

At 6:26 P.M., almost four hours later, a magistrate signed a warrant for the search of room 142 and the arrest of George Brooks. The warrant omits Leland Brooks, both by name and description. (Exhib. #6     ).

Trial was held in 182nd District Court of Harris County (Barr, J.) beginning on September 28, 1999. Leland Brooks was convicted of possession of cocaine with intent to deliver and was sentenced to life imprisonment. He was acquitted on the charge of using a firearm.

## ISSUES AND AUTHORITIES

ISSUE  1:    Whether Brooks received Effective Assistance of Counsel before trial, during trial and in Post-conviction Proceedings.

Ground A:  Counsel failed to challenge Warrantless Arrest.

Authorities:  "Failure to object to the defendant being arrested without probable cause or a warrant equals ineffective assistance of counsel" Chalk v. Beto, 429 F. 2d. 225 (5CA 1970).

    "...The accused in any felony case shall

have the right to an examining trial before indictment in the county having jurisdiction..." Tex C.C.P., Art. 16. 01. Examining Trial.

a. Ample evidence was available to counsel, which if presented in a timely Examining Trial, must have successfully challenged the Warrantless Arrest of Leland Brooks. This evidence taints the State's case against Brooks throughout every issue presented. The points of evidence are:

(1) NO WARRANT ever issued naming or describing Petitioner Leland Brooks; (RR vol II; p. 43-44 );

(2) NO CONSENT was given to State's agents to enter or to search the premises where Leland Brooks was arrested (RR vol II; supra; RR vol V, p. 64-65);

(3) NO EXIGENT CIRCUMSTANCES required for a Warrantless search and seizure were ever claimed before a neutral magistrate, (Exhib #6 & #7);

(4) NO INFORMATION, NO AFFIDAVIT or COMPLAINT ever issued from any source, either-reliable informant or Police, stating that Leland Brooks had broken a law of the State of Texas or of the United States of America.

b. At trial, Agent Smith testified that his team had lacked probable cause, (RR vol V, p. 124-129; 142-153).

-5-

C. On June 1, twenty-four days after Brook's arrests, counsel wrote a letter to A.D.A. Fred Wilson (Exhib. #14) in which he pleads Brooks' release on the contention the search and seizure at room 142 were illegal. Counsel enclosed two affidavits and a video in support of this claim.

Counsel's letter was useless and hardly professional. It went unanswered. It was unappealable, and by his action counsel denied petitioner access to court, guaranteed him by Art. 16.01, supra. In no possible way could this be viewed as a "trial strategy" and counsel's incompetence prejudiced petitioner's case; it sent him into trial with illegal evidence against him. (See: ISSUE 2    ).

———————

Two of Brooks' grounds for his claim of ineffective assistance of counsel have been grouped for ease of discussion. Several general principles as well as examples of analagous laws, apply both to Ground B and to Ground C.

Ground B:  Counsel did not conduct a thourough
              investigation of facts surrounding the
              charges and possible defenses.

Ground C:  Counsel failed to adequately prepare
              for trial.

-6-

Authorities:

      "Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate, the State's case through discovery. Such a complete lack of pretrial preparation put at risk both the defendant's right to an "ample opportunity to meet the case of the prosecution and the reliability of the adversarial testing process."

      U.S. v. Cronic, 104 S. Ct. 2065 (1984).

      "Trial counsel's failure to investigate, locate and present potential witnesses' testimony, which could have affected jury's evaluation of truthfulness of prosecution witnesses, amounted to ineffective assistance."

      Nealy v. Cabana, 764 F. 2d 1173 (5 CA 1985).

      "Trial counsel's overall performance, failure to prepare for trial, properly cross-examine government witnesses with inconsistent prior statements, failed to call corroborating witnesses to support defendant's testimony, deprived defendant of a fair trial and constitutes ineffective assistance of counsel."

      United States v. Tucker, 716 F. 2d. 576 (9 CA 1983).

a. The affidavit of defense counsel Fong, submitted to the trial court on Dec. 15, 1999 — only two months after trial — is a gross prevarication; (Exhib.# 1 ).

1. In paragraph 4 counsel attests he hired one John Castillo to take a video of room 142 in order to lay predicate for the video's admission [at trial], then admits admits he entered his own video in evidence. Yet in his MOTION FOR CONTINUANCE (Exhib.#20), in Sect. III, para 2 he confesses he needed time for retaking a video of the scene: "... must be retaken so that counsel for Defendant is not a witness in this matter." Which situation actually transpired (RR vol X, p. 146-148 ).

If Castillo had already taken a video before trial, why was it not admitted? And at trial, where was Castillo? There was no Castillo; certainly not hired by counsel to serve in this case for Leland Brooks.

2. In paragraph 5, "An investigator was hired to discover and talk to witnesses in this case." Not Castillo; then who? Then: "The investigator also went to the scene and took a video from 142 and drew a schematic of the room layout." But hadn't Castillo already done that? Why were neither of these videos or layout used at trial and counsel's own video admitted and shown as State's Exhib. #34? (RR vol X, p. 132-133 ). See: Diagram: Room 142, Appendix.

- 8 -

Because no other videos of room 142 existed, and to prevent Brooks from being able to question why counsel's video of _another_ room, no. 224, was used instead, a second floor room guarded by a metal rail. No such rail exists in front of ground floor room 142. Brooks was unable to see that video in the courtroom, being called into viewing position by counsel just as it ended. (RR vol. I, p. 146-149 ). Video of room 142 would have shown the impossibility of Agent Smith being able to see a table behind the partially open door held by Leland Brooks, the door's base stopped by two boxes of auto parts left minutes before by two witnesses never contacted.

3. In paragraph 6, "... Angela Doyle was subpoenaed." She was not; none of Brooks' witnesses were subpoenaed. The docket and records are totally devoid of any motions or orders to issue subpoenas. Ms. Doyle, manager of the motel where Brooks and his brother were staying, could have testified: (a) that 142 was never locked by police on May 7 after the arrests; (b) that the electronic door card's use would have been registered in the motel's office had the room been locked and reentered; and it had not been; evidence left in the room was therefore unsecured; and (c) that counsel and later police came to the motel weeks after the arrests

and set up a photo scene for trial evidence, both parties using rooms with different layouts entirely from number 142.

Nor did counsel and Brooks ever discuss not calling Ms. Doyle to testify at trial. It would be very questionable strategy to dismiss such testimony from the manager.

4. In paragraph 7: "... Bruce Wilkinson was subpoenaed..." He was not; again, no record on the docket. Wilkinson and James Martin, on separate days went voluntarily to counsel Fons's office and gave affidavits (Exhib #4, and #5). These declarations were cited in counsels letter to Asst. D.A. Fred Wilson. (Exhib. #14) seeking release of Brooks' for lack of Probable cause a month after arrest. Yet counsel now declares they "expressed a desire not to testify." Subpoenas exist for the very purpose of overcoming reluctance. They only had to testify to giving the statements avowed in their affidavits. Counsel even neglected to enter the affidavits as evidence, to preserve them for appeal, to the effect they were refused by the appellate court.

5. Nor is counsel's affidavit in accord with his statement given to the court at trial (RR vol. VII p. 101-102). When questioned by the trial Judge if he's going to call "... the other [witness]," counsel replies, "I can't

- 10 -

find him, but I'm not going to ask for a continuance." Counsel never subpoenaed him, Bruce Wilkinson, who, according to Fong earlier in the day, was just outside in the hall. If counsel had agreed with "... the Defendant and his wife and both were aware ..." (para. 7) the witnesses were not going to show up, why was the witness on the trial schedule lying in front of the Judge? Why counsel's reply, rather than a simple "He's been dismissed, your Honor?"

Counsel's affidavit is a pure fabrication. Bruce Wilkinson would have testified he was an eyewitness to the entry at room 142: a man in shorts with a beard, pistol drawn, knocking then reaching in and dragging Leland Brooks outside once the door was opened; Brooks under arrest the moment he faced the agent's gun. This testimony would have nullified the State's case.

6.(a) In paragraph 8 counsel attests he interviewed both Jim Holloway and "Tom". No he did not, or he would have made notes their names are Tom Holloway and "Jim". The affidavit of George Brooks (Exhib #3 at XVIII), who has known Holloway for several years, attests that he spoke to both by phone after trial. Neither were ever approached by counsel or an investigator to be deposed or to testify for Leland Brooks.

-11-

(8)  The testimony of these men had valuable potential.  They were the pair who arrived at the motel in a blue GMC pickup, entered room 142 and left only a couple of minutes later. (RR vol.Ⅴ, p. 33-35  ). This incident was described by Agent Smith as being typical of drug dealing activity. (Exhib.#6, p. 3 ). He failed to include that Tom and Jim each carried a box inside -- a condenser and a dryer for George Brooks' Cadillac air conditioner.  The boxes were stored on the floor behind the door, and prevented its being opened as wide as Smith stated.

Counsel assured Brooks he had interviewed these witnesses; but he had no notes, only incorrect names and definitely no subpoenas. Tom Holloway and Jim could have testified there was no bag of powder in view on the table. (See: Diagram 142)

7. (a) In paragraph 10 counsel alleges that Brooks' wife never informed him about a potential witness, 'Harold,' the manager/bartender of Westwind Tavern at whose parking lot brother George Brooks and young James Martin were stopped in Leland's car and handcuffed, detained in a squad car, but "not arrested." (RR vol.Ⅴ p 42, 44, 206).

(b) If counsel was not informed about 'Harold'- at least by Brooks, if not his wife - it is curious

that counsel could have so specifically discussed what "Harold" overheard and could have revealed: that the plainclothed officer who detained George Brooks had warned George that he, the narc, had bags of cocaine to plant on George if he did not co-operate, i.e. give consent for his room to be searched. Harold had come out by the tavern's dumpster with several customers, all curious to see what was happening at this strange "traffic" stop that included plainclothed agents. James Martin's affidavit attests to seeing two small baggies in the agent's hand. (Exhib# 5 ).

(c) How could counsel have discussed this malicious intent of the agent with Brooks before trial if he himself had not heard of it previously? Martin's affidavit was given in Fong's office as early as May 28. It would seem that a competent defense attorney should have jumped at such an opportunity, especially a "...narcotics attorney," (RR vol. IV, p. 67, L. 15-16     ).

6.    The trial court docket sheet reflects that the FELONY INDICTMENT in Brooks' Cause No. 819711 was entered on July 30, 1999; that three days later, on August 2, Defendant appeared with counsel Fong and that a Jury trial was set for August 30. This left 28 days in which counsel could have at least

-13-

made these possible, and certainly needed, preparations for trial:

(1) to procure an independent video tape of the actual room 142 and scale diagram of its floorplan and furnishings as of May 7, 1999;

(2) to have investigator obtain affidavit of motel manager Angela Doyle, verifying floor plan and records concerning the room's exit-entry history on May 7;

(3) to obtain affidavits of Tom Holloway and his employee Jim who carried two boxes of auto parts into room 142, and left them behind the door;

(4) to obtain a copy of the blood test of Leland Brooks taken by EMT personnel at arrest scene, which would have proven Brooks had used no cocaine, no marijuana, nothing. In his entire life Brooks never even used tobacco;

(5) to depose the Tavern manager, Harold, to preserve malicious intent and evidence detrimental to the State's cases against Leland Brooks, and of George, the target under surveillance;

(6) to move the court for subpoenas ordering all of the potential witnesses to appear for trial;

(7) to interview at least the one witness counsel would call to testify — George Brooks, and have him dressed out in civvies rather than jail clothes; the

- 14 -

the jail records at 1301 Franklin Street in Houston will verify that counsel Fong never conferred with George Brooks, with or without George's own attorney. named Pruett;

(8) for mitigation, to depose Brooks' wife, Deborah, and daughter Julie Scruggs, and receive documents confirming Brooks' life-long occupation as a millwright; Mrs Brooks came and remained in Houston over 100 days.

(9) to impeach the 'previous conviction' shown on the indictment for enhancement by reviewing the supportive documents sent by a clerk of court in Tennessee, (Exhibs # 8          );

(10) to file and argue ten motions prepared by himself. Instead, counsel waited until date of trial to file them, eventually argued one improperly, and told Brooks there was no time to have the court hear the others. (See: Ground E, p. 19 ).

C. By no accounting should counsel Fong be deemed to have prepared Brooks' case for trial, nor do his closing arguments for the guilt and sentencing phases pretend to be exceptions, as will be shown in Ground G. For pre-trial preparation, Leland Brooks' $ 7,500 purchased a useless video of a different room which could not be disputed. because counsel took it; three pages of

-15-

affidavits whose affiants walked through counsel's door to volunteer themselves, but which were never put into evidence; and a worthless letter to an Asst. D.A. in lieu of a properly filed Motion for an Examining Trial.

Ground D: Counsel failed to conduct proper Voir Dire

The substance of ABA Standard 4-72 and its commentary stresses the fact that jury selection decisions are almost always made under pressure of time, and for this reason counsel could be expected to make wise decisions only if he has adequately prepared for trial.

In the present case counsel had subpoenaed no witnesses to the agent's entry of room 142, and planned not to call the defendant to testify, but to rely solely on testimony of brother George Brooks, in Jail uniform, to parry the accounts of State's officers. The verdict would surely hinge on the credibility of these witnesses as seen by the jury. For just such reason, Counsel was obligated to sound deeply those several prospective Jurors who had served before in felony causes, try to determine any bias for police testimony. He didn't.

-16-

a. Counsel failed to move for a time extension. A venire panel of sixty members was called. After some twenty minutes to greet and brief them, the court allowed State and defense but forty minutes each to assess this panel, less than one minute per member; 40 seconds to be exact. Brooks, age 63, faced 25 years to life if convicted, yet counsel gave no concern to the fact he could not possibly evaluate crucial facts, attitudes and prejudices within this panel in the tiny frame allotted.

b. From the panel of sixty, twenty-two were struck for causes. (RR vol II; p. 129). Of the remaining nine should have been considered objectionable to defenses' cause: Nos. 3, 5, 6, 27, 29, 33, 35, 51 and 57. Six of these had served on juries hearing murder, drugs, burglary, assault and auto theft. One's husband was a serving parole officer (No. 33 at p. 79-80); one believed you can knowingly possess an item when you are un-aware of it (No. 6 at p. 100-01); the last has a husband nearly killed by burglars on drugs, looking for money. Her husband is still badly scarred (No. 51 at p. 96   ).

c. Of these nine counsel Fang did not strike

-17-

one. Eight were seated as Jurors, only No. 57 fell too far down the list. Of those who had served as jurors previously, Fong never asked one for the verdict rendered, how he voted nor the punishment awarded. Instead counsel used his last ten minutes polling the entire sixty members for a predetermined answer to how they would "... characterize punishment, as a form of rehabilitation... deterrance, pure punishment or a combination of the three?" Since he allowed five to be seated who would send his client to prison for "pure punishment", how this poll benefitted Brooks has never been explained. No sound recognizable trial strategy is evident in counsel Fong's methods.

Jurors No. 3, 6, 27, 33 and 20 answered for 'punishment only', the other seven answered for 'combination.' (RR vol IV, p. 111 et seg).

Counsel withheld information from Brooks, denying him the right to see ages and occupations of prospective jurors. And counsel's performance in jury selection was less than should have been exhibited, especially in view of the possibility for Brooks to receive a life sentence.

-18-

Ground E:   Counsel failed to file any meaningful motions.

Authorities:   " Trial counsel's failure to file any pretrial motions on defensive issues, failure to seek pre-trial discovery, failed to obtain a transcript of testimony before the grand jury, warranted an evidentiary hearing to resolve the ineffectiveness of counsel claim."
Clark v. Blackburn, 619 F.2d 431 (5CA, 1980).

On the date set for trial, August 30, 1998, counsel filed ten motions originated by himself. Only one, MOTION TO SUPPRESS EVIDENCE (Exhib #19), was heard by the court, being carried through trial upon suggestion of counsel. (See: ISSUE 2, p. 35 ).

a. 1.  The court clerk's records are devoid of any notes indicating that any of the remaining motions were presented to the court, that any arguments were heard, or that one single ruling was made by the trial judge. Considering the improper ruling on Suppression, it may be said that in the 100-odd days since his retention by Brooks in May, counsel filed not one defensive motion in clients' cause.

-19-

2.   On August 30 counsel spoke with Brooks by phone in the conference area beneath the courtrooms. Here he excitedly informed Brooks that Judge Barr had denied FIRST MOTION FOR CONTINUANCE (Exhib #20). This in itself is a fabrication: Judge Barr was never confronted by that Motion; it's not on her docket, not in the clerk's records.

3.   In Sect. III of that Motion, counsel expressed difficulty finding witnesses "Tom and Jim" (see: Grounds B/C, para 6(a), p11). Counsel Fong had been given Tom Holloway's business address by Leland Brooks who learned it from George, and again counsel had the 100 days to have an investigator visit and depose, and finally to subpoena. He did none of this. "Jim" worked with Holloway.

Also in Sect III is counsel's admission that it was he who took the video of a motel room, that he needed to have an investigator take one "in that counsel for the Defendant is not a witness in this matter."

b.   Both matters were crucial to Brook's defense. Tom and Jim carried two boxes of auto parts into room 142 and left them behind the door (APPENDIX; diag. of 142). This prevented the door being opened fully, exposing 142 as an 'efficiency' unit with a small kitchen. There was no "... small round table, a little

-20-

sitting table like you find in motel rooms," per the testimony of Agent Smith (RR vol II, p. 47). The table in 142 was a square dinette table, flush against the left end wall with two solid-back chairs, one at each end. The back extended above the table enough to have blocked the table's surface from view of anyone outside the doorway. Yet it was on "a small round table" that Smith alleges he saw a bag of "white powder" that proved to be 19.2 grams of cocaine. (RR vol II, p. 87). The State's photos offered as exhibits at trial, were taken in August, months later and not in room 142. (RR vol II, p.48-49).

2. In the attorney-client conference area, Brooks fell to the floor with a heart attack — he has a cardiac history. Trial was never officially reset. Both Leland and George, his only witness, were called to the courthouse from jail every day of September, trial finally called on the 28th. This had given counsel an additional 28 days in which to subpoena witnesses, to procure an independent video and diagram of the actual room 142, and to present and argue defensive motions. He did none of these.

-21-

Ground F: Counsel failed to request any jury instructions and failed to contest omissions of a key element from the jury charge.

Authorities: "Trial counsel's failure to request any jury instructions compounded with other errors amounted to ineffective assistance of counsel."
United States v. Hammonds, 425 F.2d 547 (DC, 1970)

"Trial counsels's failure to contest the omission of an essential element from the jury charge constitutes ineffective assistance of counsel."
Lombard v. Lynaugh, 868 F.2d 1475 (5cir, 1989).

a. 1. The trial court's charge to the jury included instruction to disregard "... evidence obtained by an officer ... in violation of any provisions ... or laws...." (RR vol VIII, p. 27, l 19). The jury, however, in the process of trial, never heard any words defining the 'provisions ... or laws' with regard to Warrantless search and seizure, which surely should have been the key element of counsel's defense. Nor had counsel, before the jury, dwelled upon violations which clearly occurred upon officers' illegal

-22-

entry into room 142.   The Jury had been exposed only to both the State's and Counsel's own misguided obsessions with the propriety of a "Knock and talk". (RR vol V, p. 128-129; p. 185-186, p. 136).

2.

a.   "An examination of the common-law of search and seizure leaves no doubt that the reasonableness of a search of a dwelling may depend in part on whether law enforcement officers announce their presence and authority prior to entering."   New Jersey v. T.L.O., 105 S.Ct. 733, 740 (1985).

"... We hold that this common-law "Knock and announce" principle forms a part of the reasonableness inquiry under the Fourth Amendment."
Wilson v. Arkansas, 115 S.Ct. 1914 (1995).

"Because officers entered without a proper knock and announcement, the subsequent arrest was invalid and the evidence seized in the subsequent search was inadmissible."
Sabbath v. United States, 88 S.Ct. 1755 (1968)

b. 1.   Agent Smith had early admitted there was no announcement of identity before they entered room 142.   (RR vol I, p. 44, 45). Counsel failed to ask for the Jury to be instructed that

- 23 -

a "knock and announce" is the only lawful proceedure for officers to gain entry absent exigent circumstances, then later failed to object to its requirement being omitted from the Jury charge.

2. (a) Smith testified his team set up surveillance of the motel's lot about 2:P.M; that the Brooks returned about 3:P.M. and another hour lapsed before agent's entry. They'd known since before 2:P.M. they were going in and had well over three hours to obtain a warrant.

(b) There were no exigent circumstances in this case. The agents already had George Brooks and James Martin under arrest; they had the room's key card from George; they had Leland Brooks' red Dodge, his luggage and keys.

3. "In the absence of a warrant, police may only arrest a suspect in a home - even a temporary residence - under exigent circumstances."
Paxton v. New York, 100 S.Ct. 1371 (1980).

"This crucial protection would evaporate if the police, before obtaining a warrant, could search a private home without one to make sure that what they were looking for was really there and

-24-

would still be there after the warrant arrived."
<u>Mincey</u> v. <u>Arizona</u>, 98 S. Ct. 2408, 2414 (1978).


C.  The Jury's forced ignorance of the true
conditions and law, absent from their deliberations,
had to affect the verdict.  Counsel's inert per-
formance in this regard, withholding facts and
law from the jury, thereby prejudiced Brook's case.


Ground 6:  Counsel's conduct amounted to
           abandonment of his client.


Authorities:  cited below with specific texts.


Generally:  "Defense counsel's performance was
            not only ineffective, but counsel aban-
            doned the required duty of loyalty to
            his client, did not simply make poor
            strategies or logical choices, he acted
            with reckless disregard for his client's
            best interest and apparently with
            the intention to weaken his client's case."
            <u>Osborn</u> v. <u>Shillinger</u>, 861 F.2d 612 (10 CA, 1988).


            " A party whose counsel is unable to

Provide effective representation is in no better
position than one who has no counsel at all."
Griffin v. Illinois, 76 S.Ct. 585, 591 (1956).

These general citations well reflect too-numerous
instances, both before and during trial, in which
counsel Fong's conduct reveals inactivity, laziness,
ineptitude and outright disloyalty amounting to
clear abandonment of petitioner Brooks. Con-
sideration of these charges, coupled with review
of the trial transcript and the court records of
his cause, support Leland Brooks' contention that
he would have been better served had he represen-
ted himself.

a.1. Counsel failed either to use crucial evidence
or to preserve it for direct appeal. One eye witness
to agents' entry to room 142 was Bruce Wilkinson who
gave an affidavit to counsel on May 31, 1989. He
avowed that the agent who knocked at 142 did so
with a drawn gun and did not announce his identity;
that he dragged Leland Brooks through the doorway.
(Exhib #4).

2. This affidavit was not used at an Examining
Trial; Wilkinson was neither subpoenaed to testify

-26-

nor deposed. His affidavit was not offered into evidence at trial. This evidence was therefore lost, it was disallowed by the Third District Court of Appeals (Austin) on Brooks' direct appeal.

b. 1. Counsel deprived Leland Brooks of his right to be tried last. The cases of Brooks and his brother George were severed. George had a separate case pending from January 1999. It was clearly to Leland's advantage for his brother to be tried first.

2. Texas C.C.P. Art. 36.10 ORDER OF TRIAL provides that if cases are severed, defendants may chouse the order of their trial. Counsel withheld this knowledge from his client and the brothers were not given opportunity to decide this matter to their mutual advantages.

c. 1. Counsel at no point before or during trial contested the fact Agent M.E. Smith's affidavit for a warrant: (a) contained a body of hearsay evidence whose origin was never established; and (b) failed to inculpate Leland Brooks.

2. Smith's affidavit gives accounting of a traffic violation stop by H.P.D.; the finding of

-27-

miniscule amounts of marijuana; incredible statements of George Brooks and an account of arrests of George and James Martin, all at an intersection by Westwind Tavern, two miles from where Smith testifies he remained to watch room 142. (RR vol V, p. 41-42).

3. Texas C.C.P. Art. 15.02 REQUISITES OF COMPLAINT, requires name or description of accused and that it state "... that accused has committed some offense against the laws of the State." No such document ever issued accusing Leland H. Brooks; and no warrant ever issued to arrest Leland H. Brooks.

4. Smith's comment that George Brooks told officers at the arrest scene that he had more marijuana at room 142 is absurd. No marijuana was found in the room or in his car by the team or canine unit. Nor was marijuana specified as an object for search in the warrant issued for George Brooks.

5. Counsel's lack of investigation and objections, even in this one matter, prejudiced Leland Brooks' case.

a. 1. Counsel failed to obtain copies of documents or testimony presented to a grand jury in this cause

-28-



of Brooks.    The Fifth Amendment of the United States Constitution provides that no one shall be held to answer for a crime "unless on a presentment or indictment of a grand jury..."

2.  Brooks' own requests to obtain such records were refused; and his appellate counsel, Jules Laird, informed him by letter there were no grand jury proceedings on record.
See: _Clark_ v. _Blackburn_, supra at 19.

e. 1.  Counsel's opening words to the Jury were erroneous remarks that could weaken defendant's case.    They concerned conditions of Brooks and his 'after lunch' nap in room 142.

a.  Jurors first heard that Brooks went to his brother's room with his bags packed to take a nap. They heard that a gun - George's .357 magnum - was "...found on a nightstand in room 142." Finally, that Brook's had been in the room "... for a few short hours to take a nap." Yet counsel positively knew otherwise about each point:
(a) Leland and James Martin put their bags in Leland's car after checking out of room 326 before lunch. Agents testified no property of Leland or

James was found in 142. (RR vol. I, p. 134);

(b) Even the offense report of Agent Smith attests the .357 magnum was inside a drawer of the stand — never in view. (Exhib # 7; also Smith at Vol I, p. 79);

(c) Leland was in room 142 only 20 minutes at most after George and James drove to the Tavern, only two miles down the service road, where they stopped, cuffed, and the agents' team returned to the Suburban Lodge for their entry to the room.

(RR vol I, p. 141)

3. Counsel's misstatements were reckless, apparently meant to assist the prosecutor to establish her case for the missing affirmative link between Brooks and evidence allegedly found in room 142: that Leland Brooks was hours alone with a cache of cocaine, probably hauled in inside his own bags; that he was in sole possession — albeit without a room key card and no car — for several hours; lying there with a magnum at his fingertips. All of which State's prosecutor actually inferred during voir dire and trial. (RR vol III, p. 54-56; Vol I, p. 11-12 ).

£. 2. Counsel failed to object to prosecutor's absolutely misquoting law concerning use of a weapon

-30-



in commission of a crime. In voir dire A.D.A. Beavers dwelled upon her erroneous instruction that although the indictment stated "... a deadly weapon, a firearm, was used or exhibited ...", that the suspect "doesn't have to take the gun down and use it, it doesn't have to be displayed... it could be in a drawer..." (RR vol II, p. 54-56).

2. In State's closing argument counsel again failed to object when A.D.A. Beavers informed the jury: "You don't have to use or exhibit it. There is a gun here with the dope. They usually go together..." (RR vol. X, p.57, L.8-19)

3. In Bailey v. U.S., 116 S. Ct. 501, 505 (1995), the Court held: "1. Section 18 U.S.CA. §924 (c)(1) requires evidence sufficient to show an active employment, a use that makes the firearm an operative factor in relation to the predicate offense. Evidence of the proximity and the accessibility of the firearm to drugs or drug proceeds is not alone sufficient to support a conviction for use under the statute." Also: Smith v. U.S., 113 S. Ct. 2050 (1993).

4. The State's indictment of Brooks using a deadly weapon and prosecution's falsifications

- 31 -

of the law were malicious attempts to saddle Brooks with an aggravated weapons charge guaranteeing the elderly defendant would never live to be paroled. Sufficient evidence existed to quash this charge had counsel exerted but one iota of effort to read the Offense Report and held pretrial interviews of State's witnesses. He made no efforts to quash the charge nor any objections to correct the law; reckless conduct and in no way proffessional trial strategy.

9. 1. Counsel established the credibility of the State's alleged informant. Another Motion filed by counsel at the last moment on August 30 was his MOTION TO IDENTIFY... CONFIDENTIAL INFORMANT, (Exh #28). Like the others, this Motion went unheard by the Court. Nor anywhere in State's DIRECT are agents asked about past experience or reliability of their informant in this cause.

2. Defense counsel accommodates the over-sight. In Cross of Agent Smith, he credits the State's informant by asking the Jury to believe that a 'confidential informant' "... is a person who works on behalf of the Houston Police Department as a citizen and provides information to you...." A more civic-minded picture Jurors

- 32 -

were never to see in questioning by State's own attorney. (R.R. vol Ⅴ, p. 109   ).

3. Counsel made no attempts to confront, even less to question the credibility of the informant. And it must be borne in mind that to this point in the trial, the informant had only inculpated George Brooks, "... selling drugs from room 142." (RR vol Ⅴ, p. 110-111 ).   Counsel solved that problem, too. (See: h, below).

h.1. Counsel inculpated his client. In para c.1. supra at page 27, petitioner states he was not inculpated in Agent Smith's affidavit. Nowhere in testimony under State's DIRECT does any agent attest that Leland Brook's committed a crime.

2. Counsel, having now accredited _all_ informants, gives assist to the State when he asks in CROSS: "Officer Smith, prior to May 7th of 1999, had you ever heard of the name of Leland Brooks?" thus granting the agent an invitation to say anything about counsel's client. Smith here states he had information that Leland was involved in activity with George, (RR vol Ⅴ, p. 111 at line 13).

3. In REDIRECT at page 140, State's attorney

- 33 -

asks Smith about counsel's question, and on Page 141 Smith's informant has George Brooks delivering drugs by air to Leland in Tennessee. It's damning. It's hearsay, yet again with no objections from counsel Fona. He's already certified all informants "who work" for H.P.D.

4. In his closing argument, counsel credits the entire testimony of Agent Smith: "Officer Smith - and I tip my hat to officer Smith, he testified very well. And I would agree with his testimony except for one self-serving statement." (RR vol. VIII, p. 36).

The Jury never learned what even that one statement was.

In sections 3. and 4., the Petitioner was not simply poorly served by unsound strategy or normal lapses of Judgment; Leland Brooks was victimized by a systematic effort meant to destroy his case. Osborn v. Shillinger and Griffin v. Illinois, (supra at 25, 26), say it succinctly.

ISSUE 2:   Whether Brooks was denied Due
           Process of Law when trial court knowingly
           denied Suppression of illegally obtained
           evidence.

Authorities:  Tex. C.C.P. Art 38.23 Evidence Not to be Used.
        "(a) No evidence obtained by an officer or
        other person in violation of any Provisions of
        the Constitution or laws of the State of Texas..., or
        of the United States of America, shall be admitted
        in evidence against the accused on the trial
        of any criminal case."
        "(b) It is an exception to the provisions of
        Subsection (a) of this Article that the evidence
        was obtained by a law enforcement officer
        acting in objective good faith reliance upon a
        warrant issued by a neutral magistrate based
        on Probable cause."

        " The terms of [Art.38.23] are mandatory....
        Violation of a State statute or Constitutional
        provision in obtaining evidence requires
        suppression of that evidence under Art 38.23,
        supra; a Judge has no discretion in ruling on
        the exclusion of that evidence...."
        Polk v. State  738 S.W. 2d 274, 276 (Tx G App, 1987).

- 35 -

Those authorities were well established law of the State of Texas. The court abused its authority by knowingly disregarding the mandate in favor of an officer's testimony which, even if true, still did not establish legality for a warrantless entry.

A. 1. In her ruling on the Suppression Motion, the Court admitted officers entered room 142 without warrant or consent: "I will state for the record, obviously, that at the time that the knock-and-talk was done there was no warrant at that time and there was no consent to search, but I do find that Officer Smith's testimony was credible. Based on his testimony I believe that he was able to see onto the table in the room and saw the cocaine in plain view, so I will deny the Defendant's Motion to Suppress." (AR vol VII, p. 17; Appendix Diag. 142)

2. What Smith may have seen is immaterial; at issue are the illegal means employed to see it:
"Seizure in plain view does not involve intrusion on privacy," Horton v. California, 110 S. Ct. 2301 (1990);

"Plain view alone is never enough to justify warrantless seizure of evidence," citing: Coolidge v. New Hampshire, 91 S. Ct 2002.



"Because officers entered without a proper knock and announcement, the subsequent arrest was invalid and the evidence seized in the subsequent search was inadmissible," citing:
<u>Sabbath</u> v. <u>United States</u>, 88 S.Ct. 1755 (1968).

B. The court's ruling, in light of the statute and these decisions, was undoubtedly wrong. The sole exception to the mandatory suppression detailed in Subsection (a) of Art. 38.23, is that detailed in Subsection (b) which tends no provision for the court's opinion of witness credibility. The very positive certainties known to the court were the lack of a warrant for Leland Brooks, lack of any probable cause to arrest Leland Brooks, lack of consent to search room 142, lack of announcement of identity of officers, and lack of exigent circumstances. The search and seizure were therefore illegal, and by ruling to deny suppression of evidence thus seized, the 182nd District Court deprived Leland H. Brooks of Due Process of Law — a right guaranteed him by the Fifth Amendment of the U.S. Constitution.

## CONCLUSIONS & PRAYER

Trial counsel Fong hired no independent investigator despite assertions presented in his affidavit of December 1999. He subpoenaed no witnesses for trial, again belying his affidavits, and as well the statement to the court that he would have three witnesses to testify. Counsel withheld key evidence attested by eyewitnesses, declining to move for Examining Trial or to present the evidence to the jury at court. This deprived Brooks of his rights for a pretrial hearing; counsel for all time nullified the very evidence that would free his client. Counsel had seen the value of the eyewitness affidavits, yet wasted effort he must have known would be useless to his client's cause: presenting the evidence by letter to State's attorney rather than moving the court for a hearing.

Counsel's conduct in voir dire revealed his total lack of preparation with not one shred of discernible strategy, either in probing for jurors' strength's and weaknesses or in his process of final selection. Counsel left eight very dubious candidates to be seated, and of five he hadn't a clue of their conduct as jurors in previous felony trials.

Counsel made no attempts to demonstrate to the jury what actually occurred at room 142 or the

-38-



~~or the~~ limits of agent Smith's vision had the door been positioned as Smith testified.

Counsel had addresses for eight valuable defense witnesses -- all qualified in this habeas text. He only spoke to three, the two who walked into his office and gave evidence, and George Brooks, held in county jail. He subpoenaed none of the eight and failed to interview George Brooks before trial, sending him to the stand in an orange jump suit.

Counsel misstated facts to the jury, bolstering the State's cases allowed the prosecutor to continually misquote laws; failed to ask for proper jury instructions concerning illegal entry and failed to object to the court's omission of this key element in its jury charge. Counsel obligingly certified the credibility of every police informant in Houston, then opened the way for State's chief witness to inculpate Leland Brooks as an interstate dope dealer by hearsay allegations from an assumed informant he'd vetted only minutes before.

In his closing argument for the guilt portion, counsel congratulated Prosecution's chief witness and praised his testimony. Counsel's closing argument at sentencing requires but 15 lines of type.

Where was the investigation, where the defense motions and Examining Trial? Where was the

-39-

motion for subpoenas and witnesses? Where was the loyalty of retained counsel, and where was Leland Brooks' professional "friend in court"? Leland Brooks did not have a friend in court, he was without counsel from the date of his illegal arrest until the day he was sentenced to life imprisonment. Albert Fong did not so much as attempt to perform in the prudent, professional manner of the 'counsel' contemplated by the Sixth Amendment of the United States' Constitution, and his conduct thouroughly prejudiced Brooks' case.

And the 182nd District Court denied Brooks Due Process of Law per the Fifth Amendment of that Constitution.

WHEREFORE, the entire premises considered, the Petitioner, Leland H. Brooks, Prays this HONORABLE COURT will issue its Writ of Habeas Corpus ordering the immediate reversal of his conviction and his release from custody by the State of Texas and its agency.

Respectfully submitted,

Leland H. Brooks, PRO SE
Leland H. Brooks